**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

|  |  |
|---|---|
| NEXTECH SEMICONDUCTOR, LLC,<br><br>PLAINTIFF,<br><br>v.<br><br>MICRON TECHNOLOGY, INC., MICRON<br>SEMICONDUCTOR PRODUCTS, INC.<br><br>DEFENDANT. | CIVIL ACTION NO.: 7:26-CV-00079<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Nextech Semiconductor, LLC ("Plaintiff" or "Nextech") brings this action for patent infringement against Defendants Micron Technology, Inc. ("Micron Technology") and Micron Semiconductor Products, Inc. ("Micron Semiconductor" and, together with Micron Technology and Micron Semiconductor, "Micron" or "Defendants"), for infringement of U.S. Patent Nos. 7,593,202 (the "'202 Patent"), 7,999,601 (the "'601 Patent"), 8,179,108 (the "'108 Patent"), 8,558,591 (the "'591 Patent"), 8,604,889 (the "'889 Patent"), 8,704,587 (the "'587 Patent") (collectively, the "Asserted Patents"). Nextech, on personal knowledge as to its own acts, and upon information and belief as to all others based on investigation, alleges as follows:

## THE PARTIES

### A. *Nextech*

1.      Plaintiff Nextech Semiconductor, LLC is a Texas Limited Liability Company with a principal place of business at 7160 Dallas Parkway, Suite 235, Plano, Texas 75024.

2.      Nextech is the assignee of dozens of United States and/or foreign patent applications, including but not limited to the Asserted Patents, which were previously owned by affiliates of NXP Semiconductors N.V. (together with its affiliates, "NXP").

3.     NXP is a semiconductor manufacturing and design company based in the Netherlands.  It traces its roots back to the 1940s and 1950s, when its corporate parents Motorola Inc. and Koninklijke Philips N.V. ("Philips") entered the semiconductor industry.[1]

4.     NXP was established in 2006 when it was spun out of Philips's semiconductor business unit.

5.     In 2015, NXP merged with Freescale Semiconductor Inc. ("Freescale") to become "the world's 4th largest semiconductor company and largest automotive supplier."[2]

6.     Freescale itself was formed in 2004 through the spin-off of Motorola's semiconductor division.

7.     Motorola was founded as an American manufacturer with a long history of innovation in communications and electronics technology.  For example, during World War II, Motorola's predecessor company invented AM- and FM-based two-way radio devices that were carried by battlefield soldiers and "credited as being a decisive factor in many Allied victories in the field."  In the 1960's, Motorola partnered with NASA, supplying radio communications technology for the Mariner, Gemini, and Apollo space programs; in fact, the first words from the surface of the moon were relayed to Earth by a Motorola transponder.  In the decades that followed, Motorola released its first microprocessors for use in early personal and workstation computers, and it developed early cellular phones and networks, including the world's first portable commercial handheld cellular phone.[3]

---

[1] *NXP History*, NXP (last visited Jan. 22, 2026), https://www.nxp.com/docs/en/supporting-information/NXP-History.pdf.
[2] *Id*.
[3] Mark Hall, *Motorola, Inc.*, Britannica Money (last visited Jan. 22, 2026), https://www.britannica.com/money/Motorola-Inc.

8.     Motorola became the leading manufacturer of embedded microprocessors, which were used in automotive control units, industrial control systems, and such common items as kitchen appliances, pagers, electronic game systems, routers, laser printers, and handheld personal digital assistants (PDAs).[4]

9.     The successor of Motorola's semiconductor business, Freescale, was similarly a leader in the manufacture of microprocessors and microcontrollers.

10.    Indeed, following NXP's acquisition of Freescale in December 2015, NXP moved from being the number six microcontroller supplier in the world to being number one, with its MCU revenue increasing 116%.[5]

11.    Today, NXP describes its business as follows:

> NXP Semiconductors N.V. is a global semiconductor company and a long-standing supplier in the industry, with over 70 years of innovation and operating history. . . . We provide leading solutions that leverage our combined portfolio of intellectual property, deep application knowledge, process technology and manufacturing expertise in the domains of cryptography-security, high-speed interface, radio frequency (RF), mixed-signal analog-digital (mixed A/D), power management, digital signal processing and embedded system design. Our product solutions are used in a wide range of end market applications including: automotive, industrial & Internet of Things (IoT), mobile, and communication infrastructure. We engage with leading global original equipment manufacturers (OEMs) and sell products in all major geographic regions.[6]

12.    NXP devotes significant resources to research and development.  As of December 31, 2024, approximately 11,600 of NXP's 33,100 employees were "dedicated to research and

---

[4] *Id.*
[5] Gina Roos, *NXP Tops Microcontroller Supplier Ranking*, EE Times (May 1, 2017), https://www.eetimes.com/nxp-tops-microcontroller-supplier-ranking/.
[6] NXP Semiconductors N.V., Annual Report (Form 10-K) at 3 (Feb. 20, 2025), https://investors.nxp.com/static-files/c842a7f5-33d6-4a51-9ce6-bed0edf78ca1.

development of [its] products and solutions (representing 37% of [its] NXP workforce)."[7]  NXP

recorded research and development costs of over $2.4B and $2.3B in 2023 and 2024, respectively.[8]

13.    NXP's pending and issued patents cover many key technologies in the ASIC

(Application Specific Integrated Circuit), manufacturing, memory, packaging, processor, radio

frequency ("RF"), and wireless segments of the semiconductor industry.

14.    NXP has taken steps to protect its intellectual property portfolio.

15.    At least part of NXP's intellectual property strategy has included engaging in

licensing discussions with companies that NXP believes to be using its patented technology

without authorization.  While NXP has secured a number of licenses with semiconductor

companies, there have been holdouts.

16.    One such holdout is Micron.  Indeed, as discussed more fully below, NXP contacted

Micron and presented it with evidence of Micron's infringement of multiple U.S. patents then-

owned by NXP, including all of the Asserted Patents.

17.    Still, Micron did not obtain a license at that time.

18.    Micron still does not have a license to the Asserted Patents as of the filing of this

Complaint.

19.    That's where Nextech comes in.  Nextech's manager, Chad Hilyard, has over 25

years of intellectual property law and business experience, including significant experience

licensing patents.  Mr. Hilyard has also led teams of highly experienced technology and patent

licensing professionals in the management and licensing of first-class patent portfolios.  Mr.

---

[7] NXP Semiconductors N.V., Annual Report (Form 10-K) at 13 (Feb. 20, 2025),
https://investors.nxp.com/static-files/c842a7f5-33d6-4a51-9ce6-bed0edf78ca1.
[8] NXP Semiconductors N.V., Annual Report (Form 10-K) at 39 (Feb. 20, 2025),
https://investors.nxp.com/static-files/c842a7f5-33d6-4a51-9ce6-bed0edf78ca1.

Hilyard also previously served as Chief Intellectual Property Counsel at Rockstar Consortium, where he and his team were responsible for licensing discussions, litigations, and patent portfolio management for the world-class patent portfolio obtained from Nortel.  Prior to that, he was Managing Counsel at LSI Corporation and Agere Systems.

20.    Instead of continuing its own resource-intensive licensing or enforcement campaign against Micron and other holdouts, NXP assigned to Nextech a number of relevant U.S. and foreign patents and patent application, including the Asserted Patents.

### B.  *Micron*

21.    Defendant Micron Technology, Inc. is a Delaware corporation with regular and established places of business at 101 West Louis Henna Blvd Ste. 210, Austin, Texas 78728 and 1500 North Greenville Avenue, Suite 900, Richardson, Texas 75081.  Micron Technology, Inc. is registered to do business in Texas and can be served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Agent, 211 E 7th Street, Suite 620, Austin, Texas 78701.

22.    Defendant Micron Semiconductor Products, Inc. is an Idaho corporation with regular and established places of business at 101 West Louis Henna Blvd Ste. 210, Austin, Texas 78728 and 1500 North Greenville Avenue, Suite 900, Richardson, Texas 75081.   Micron Semiconductor Products, Inc. is registered to do business in Texas and can be served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Agent, 211 E 7th Street, Suite 620, Austin, Texas 78701.

23.    Micron Semiconductor Products is a wholly owned subsidiary of Micron Technology.

24.     On information and belief, Defendant Micron Technology Texas LLC ("MTT") is a corporation organized and existing under the laws of Idaho. MTT has a regular and established place of business located at 101 West Louis Henna Boulevard, Suite 210, Austin, Texas 78728. MTT is registered with the Texas Secretary of State to do business in Texas. MTT can be served through its registered agent, The Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

25.     On information and belief, Micron Semiconductor Products and MTT are wholly owned subsidiaries of Micron Technology, Inc. (collectively, "Micron"). Micron Technology, Inc. does not separately report revenue from Micron Semiconductor Products or MTT in its filings to the Securities Exchange Commission, but rather reports combined revenue from its various products and subsidiaries.

## JURISDICTION AND VENUE

26.     This action includes claims of patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

27.     The Court has personal jurisdiction over Micron.

28.     Micron has not disputed this Court's personal jurisdiction over it in recent patent infringement actions filed in this District. *See, e.g.*, *Palisade Technologies, LLP v. Micron Technology, Inc., et al.*, Case No. 7:24-cv-00262 (W.D. Tex. Aug. 8, 2025), ECF No. 68 ¶¶ 10, 12 (Micron's Answer); *Sonrai Memory Ltd. v. Micron Technology, Inc.*, No. 1:23-cv-01407-ADA (W.D. Tex. Jan. 24, 2024), ECF No. 85 ¶ 5.

29.     Micron has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within the State of Texas and the Western District of Texas.

30.    Micron, directly or through subsidiaries or agents, makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets products within the State of Texas and the Western District of Texas that infringe one or more claims of the Asserted Patents (identified further below as the Accused Products).

31.    Micron has placed or contributed to placing infringing products into the stream of commerce knowing or understanding that such products would be sold and used in the United States, including in this District.

32.    Micron has derived substantial revenues from infringing acts in the Western District of Texas, including from the sale and use of the Accused Products identified below.

33.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

34.    Micron has a regular and established place of business in the Western District of Texas, including at 101 West Louis Henna Blvd Ste. 210, Austin, Texas 78728.[9]

35.    Micron is registered to do business in Texas.

36.    Micron has committed acts of infringement in this District.

37.    Micron has employees in Austin, Texas who are responsible for the marketing and sale of products, including the Accused Products, to customers across the country and world.

38.    Micron has employees in Austin, Texas who are responsible for working on the Accused Products identified below.

39.    Micron makes, uses, sells, tests, offers to sell, and/or imports infringing products into and/or within the Western District of Texas, including at its Austin location.  Micron maintains a permanent and/or continuing presence within the Western District of Texas at its Austin location and has the requisite minimum contacts with the Western District of Texas such that this venue is

---

[9] *See Locations*, Micron, https://www.micron.com/about/locations (last visited March 6, 2026).

a fair and reasonable one.  Upon information and belief, Micron has transacted and, at the time of the filing of this Complaint, is continuing to transact business within the Western District of Texas.

## ASSERTED PATENTS

40.    On September 22, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,593,202 (the "'202 Patent") entitled "Electrostatic Discharge (ESD) Protection Circuit for Multiple Power Domain Integrated Circuit."  A copy of the '202 Patent is attached as Exhibit A.

41.    On August 16, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,999,601 (the "'601 Patent") entitled "Charge Pump and Control Scheme."  A copy of the '601 Patent is attached as Exhibit B.

42.    On May 15, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,179,108 (the "'108 Patent") entitled "Regulator Having Phase Compensation Circuit."  A copy of the '108 Patent is attached as Exhibit C.

43.    On October 15, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,558,591 (the "'591 Patent") entitled "Phase Locked Loop with Power Supply Control."  A copy of the '591 Patent is attached as Exhibit D.

44.    On December 10, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,604,889 (the "'889 Patent") entitled "Tunable LC Oscillator with Common Mode Voltage Adjustment."  A copy of the '889 Patent is attached as Exhibit E.

45.    On April 22, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,704,587 (the "'587 Patent") entitled "Configurable Multistage Charge Pump Using a Supply Detect Scheme."   A copy of the '587 Patent is attached as Exhibit F.

## FACTUAL BACKGROUND

46.    Nextech presents its claims and allegations herein in conjunction and/or in the alternative.  To the extent that certain claims or allegations may be inconsistent with one another, such allegations should be understood to be made in the alternative.

### A.    *Micron's Infringing Products*

47.    Micron makes and sells products comprising active clamps overlapping along a bank of I/O cells.

48.    Micron makes and sells products comprising at least one adjustable frequency oscillator.

49.    Micron makes and sells products comprising switch controllers.

50.    Micron makes and sells products comprising phase locked loops.

51.    Micron makes and sells products comprising configurable multistage charge pumps.

52.    Micron makes and sells products comprising regulators.

53.    Micron's products implement the above features in a way that infringes one or more of the Asserted Patents.

54.    The "Accused Products" are Micron's products that infringe one or more of the Asserted Patents (as set forth in more detail below), including Micron's SSD Products, 3D NAND Products, and DDR SDRAM Products.

55.    Micron sells the Accused Products in the United States.

56.    Micron sells the SSD Products in the United States.

57.    Micron sells the 3D NAND Products in the United States.

58.    Micron sells the DDR SDRAM Products in the United States.

59.    Micron sells the Accused Products in the United States, which are then delivered abroad.

60.    Micron sells the SSD Products in the United States, which are then delivered abroad.

61.    Micron sells the 3D NAND Products in the United States, which are then delivered abroad.

62.    Micron sells the DDR SDRAM Products in the United States, which are then delivered abroad.

63.    Micron offers to sell the Accused Products in the United States.

64.    Micron offers to sell the SSD Products in the United States.

65.    Micron offers to sell the 3D NAND Products in the United States.

66.    Micron offers to sell the DDR SDRAM Products in the United States.

67.    Micron offers to sell the Accused Products in the United States, which are then delivered abroad.

68.    Micron offers to sell the SSD Products in the United States, which are then delivered abroad.

69.    Micron offers to sell the 3D NAND Products in the United States, which are then delivered abroad.

70.    Micron offers to sell the DDR SDRAM Products in the United States, which are then delivered abroad.

71.    Micron offers to sell the Accused Products in the United States, which are then accounted for tax purposes as non-US sales.

72.    Micron offers to sell the SSD Products in the United States, which are then accounted for tax purposes as non-US sales.

73.    Micron offers to sell the 3D NAND Products in the United States, which are then accounted for tax purposes as non-US sales.

74.    Micron offers to sell the DDR SDRAM Products in the United States, which are then accounted for tax purposes as non-US sales.

75.    Micron markets the Accused Products in the United States.

76.    Micron markets the SSD Products in the United States.

77.    Micron markets the 3D NAND Products in the United States.

78.    Micron markets the DDR SDRAM Products in the United States.

79.    Micron advertises the Accused Products in the United States.

80.    Micron advertises the SSD Products in the United States.

81.    Micron advertises the 3D NAND Products in the United States.

82.    Micron advertises the DDR SDRAM Products in the United States.

83.    Micron encourages use of the Accused Products in the United States.

84.    Micron encourages use of the SSD Products in the United States.

85.    Micron encourages use of the 3D NAND Products in the United States.

86.    Micron encourages use of the DDR SDRAM Products in the United States.

87.    Micron instructs third parties on the use of the Accused Products in the United States.

88.    Micron instructs third parties on the use of the SSD Products in the United States.

89.    Micron instructs third parties on the use of the 3D NAND Products in the United States.

90.     Micron instructs third parties on the use of the DDR SDRAM Products in the United States.

91.     Micron uses the Accused Products in the United States.

92.     Micron uses the SSD Products in the United States.

93.     Micron uses the 3D NAND Products in the United States.

94.     Micron uses the DDR SDRAM Products in the United States.

95.     Micron tests the Accused Products in the United States.

96.     Micron tests the SSD Products in the United States.

97.     Micron tests the 3D NAND Products in the United States.

98.     Micron tests the DDR SDRAM Products in the United States.

99.     Micron designs the Accused Products in the United States.

100.     Micron designs the SSD Products in the United States.

101.     Micron designs the 3D NAND Products in the United States.

102.     Micron designs the DDR SDRAM Products in the United States.

103.     Micron makes the Accused Products in the United States.

104.     Micron makes the SSD Products in the United States.

105.     Micron makes the 3D NAND Products in the United States.

106.     Micron makes the DDR SDRAM Products in the United States.

107.     Micron manufactures the Accused Products in the United States.

108.     Micron manufactures the SSD Products in the United States.

109.     Micron manufactures the 3D NAND Products in the United States.

110.     Micron manufactures the DDR SDRAM Products in the United States.

111.     Micron assists in the manufacturing of the Accused Products in the United States.

112.    Micron assists in the manufacturing of the SSD Products in the United States.

113.    Micron assists in the manufacturing of the 3D NAND Products in the United States.

114.    Micron assists in the manufacturing of the DDR SDRAM Products in the United States.

115.    Micron imports the Accused Products into the United States.

116.    Micron imports the SSD Products into the United States.

117.    Micron imports the 3D NAND Products into the United States.

118.    Micron imports the DDR SDRAM Products into the United States.

119.    Micron imports the Accused Products into the United States for sale in non-US markets (for example, Canada, Mexico, or South America).

120.    Micron imports the SSD Products into the United States for sale in non-US markets (for example, Canada, Mexico, or South America).

121.    Micron imports the 3D NAND Products into the United States for sale in non-US markets (for example, Canada, Mexico, or South America).

122.    Micron imports the DDR SDRAM Products into the United States for sale in non-US markets (for example, Canada, Mexico, or South America).

123.    Micron facilitates the importation of the Accused Products into the United States.

124.    Micron facilitates the importation of the SSD Products into the United States.

125.    Micron facilitates the importation of the 3D NAND Products into the United States.

126.    Micron facilitates the importation of the DDR SDRAM Products into the United States.

127.    Micron encourages the importation of the Accused Products into the United States.

128.    Micron encourages the importation of the SSD Products into the United States.

129.    Micron encourages the importation of the 3D NAND Products into the United States.

130.    Micron encourages the importation of the DDR SDRAM Products into the United States.

131.    Micron makes available the Accused Products in the United States.

132.    Micron makes available the SSD Products in the United States.

133.    Micron makes available the 3D NAND Products in the United States.

134.    Micron makes available the DDR SDRAM Products in the United States.

135.    Micron places or contributes to placing the Accused Products into the stream of commerce knowing or understanding that such products would be sold and used in the United States.

136.    Micron places or contributes to placing the SSD Products into the stream of commerce knowing or understanding that such products would be sold and used in the United States.

137.    Micron places or contributes to placing the 3D NAND Products into the stream of commerce knowing or understanding that such products would be sold and used in the United States.

138.    Micron places or contributes to placing the DDR SDRAM Products into the stream of commerce knowing or understanding that such products would be sold and used in the United States.

### B.    *NXP's Interactions with Micron Regarding Licensing*

139.    NXP contacts other companies that NXP believes are or were using its patented technology to discuss potential licensing.

140.    For example, on September 13, 2022, NXP sent a letter to Micron's general counsel (the "Micron Notice Letter"), explaining that NXP had analyzed various Micron products in view of NXP's patent portfolio and determined that Micron requires a license from NXP.

141.    The Micron Notice Letter identified nineteen representative patents from NXP's portfolio, including all of the Asserted Patents, and explained that one or more Micron products infringe each of the representative patents.

142.    The Micron Notice Letter was accompanied by evidence of use documents or claim charts demonstrating the alleged infringement of all of the Asserted Patents.

143.    Micron received the Micron Notice Letter.

144.    Micron received the Micron Notice Letter on or around September 13, 2022.

145.    Micron received evidence of use documents or claim charts for each of the Asserted Patents.

146.    Micron received evidence of use documents or claim charts for each of the Asserted Patents on or around September 13, 2022.

147.    NXP provided Micron with ample evidence to conclude that one or more Micron products infringed each of the Asserted Patents.

148.    Micron had knowledge of the Asserted Patents by September 13, 2022.

149.    Micron had knowledge of NXP's infringement allegations against Micron for the Asserted Patents by September 13, 2022.

150.    Despite this information provided by NXP related to the Asserted Patents, Micron did not enter into a license agreement at that time.

151.    Despite this information provided by NXP related to the Asserted Patents, Micron did not make any changes to its products or processes necessary to stop the infringement alleged in the evidence of use documents.

152.    Despite this information provided by NXP related to the Asserted Patents, Micron continued to make, use, sell, offer for sale, or import into the United States its products in an infringing manner.

### C. *Micron's Vicarious Liability*

153.    Micron's subsidiaries are agents of Micron.

154.    Micron directs and controls the actions and performance of its Micron subsidiaries, including those related to infringement of the Asserted Patents.

155.    Micron authorizes the actions and performance of its Micron subsidiaries, including those related to infringement of the Asserted Patents.

156.    Micron approves the actions and performance of its Micron subsidiaries, including those related to infringement of the Asserted Patents.

157.    Micron conditions benefits derived by its Micron subsidiaries on the performance of activities, including those related to infringement of the Asserted Patents.

158.    Micron specifies the timing and manner of the performance of activities by its Micron subsidiaries, including those related to infringement of the Asserted Patents.

159.    Micron profits from the activities of its Micron subsidiaries.

160.    Micron has the rights, powers, or abilities to cause its Micron subsidiaries to stop or limit their infringing activities.

161.    Micron has not exercised its rights, powers, or abilities to cause its Micron subsidiaries to stop or limit their infringing activities.

162.    Micron is vicariously liable for the infringing activities of its Micron subsidiaries.

163.    Micron utilizes subcontractors ("Manufacturing Subcontractors") to perform certain manufacturing processes.

164.    Micron directs and controls the actions and performance of its Manufacturing Subcontractors, including those related to infringement of the Asserted Patents.

165.    Micron authorizes the actions and performance of its Manufacturing Subcontractors, including those related to infringement of the Asserted Patents.

166.    Micron approves the actions and performance of its Manufacturing Subcontractors, including those related to infringement of the Asserted Patents.

167.    Micron conditions benefits derived by its Manufacturing Subcontractors on the performance of activities, including those related to infringement of the Asserted Patents.

168.    Micron specifies the timing and manner of the performance of activities by its Manufacturing Subcontractors, including those related to infringement of the Asserted Patents.

169.    Micron profits from the activities of Manufacturing Subcontractors.

170.    Micron has the rights, powers, or abilities to cause its Manufacturing Subcontractors to stop or limit their infringing activities.

171.    Micron has not exercised its rights, powers, or abilities to cause its Manufacturing Subcontractors to stop or limit their infringing activities.

172.    Micron also relies on third-party manufacturers of controllers, analog integrated circuits, and other components used in some of its products and with outsourced semiconductor foundries, assembly and test providers, contract manufacturers, logistics carriers, and other service providers ("Supply Chain and Third-Party Service Providers") in the manufacture, testing, and shipment of the Accused Products.

173.    Micron directs and controls the actions and performance of its Supply Chain and Third-Party Service Providers, including those related to infringement of the Asserted Patents.

174.    Micron authorizes the actions and performance of its Supply Chain and Third-Party Service Providers, including those related to infringement of the Asserted Patents.

175.    Micron approves the actions and performance of its Supply Chain and Third-Party Service Providers, including those related to infringement of the Asserted Patents.

176.    Micron conditions benefits derived by its Supply Chain and Third-Party Service Providers on the performance of activities, including those related to infringement of the Asserted Patents.

177.    Micron specifies the timing and manner of the performance of activities by its Supply Chain and Third-Party Service Providers, including those related to infringement of the Asserted Patents.

178.    Micron profits from the activities of Supply Chain and Third-Party Service Providers.

179.    Micron has the rights, powers, or abilities to cause its Supply Chain and Third-Party Service Providers to stop or limit their infringing activities.

180.    Micron has not exercised its rights, powers, or abilities to cause its Supply Chain and Third-Party Service Providers to stop or limit their infringing activities.

181.    Micron's customers include, at least, large hyperscale cloud customers; mid-tier cloud, enterprise, and original equipment manufacturer ("OEM") data center customers; mobile manufacturers, and commercial and consumer client customers; and automotive, industrial, and embedded memory customers.

182.    Micron authorizes the actions and performance of its customers, including those related to infringement of the Asserted Patents.

183.    Micron approves the actions and performance of its customers, including those related to infringement of the Asserted Patents.

184.    Micron conditions benefits derived by Micron customers on the performance of activities, including those related to infringement of the Asserted Patents.

185.    Micron specifies the timing and manner of the performance of activities by Micron customers, including those related to infringement of the Asserted Patents.

186.    Micron profits from the activities of Micron customers.

187.    Micron has the rights, powers, or abilities to cause Micron customers to stop or limit their infringing activities.

188.    Micron has not exercised its rights, powers, or abilities to cause Micron customers to stop or limit their infringing activities.

189.    Micron is vicariously liable for the infringing activities of Micron customers.

## COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 7,593,202

190.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

191.    U.S. Patent No. 7,593,202 (the '202 Patent), entitled "Electrostatic Discharge (ESD) Protection Circuit for Multiple Power Domain Integrated Circuit," was legally and duly issued on September 22, 2009. *See* Ex. A.

192.    Nextech owns all rights, title, and interest in the '202 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

193.    Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '202 Patent.  For example, NXP provided Micron with actual notice of its infringement prior to the filing of this lawsuit.

194.    The '202 Patent is valid, enforceable, and directed to patentable subject matter.

195.    Micron has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '202 Patent at least by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing Accused Products into this District and elsewhere in the United States.

196.    Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

197.    For purposes of showing infringement of the '202 Patent, all the models and product lines of the Accused Products include the same or substantially the same structure which are formed in the same way, and therefore infringe in the same way.

198.    Claim 1 of the '202 Patent recites: "An integrated circuit comprising."  To the extent that this preamble is limiting, the Accused Products meet this element.

199.    The Accused Products include integrated circuits.

200.    The Accused Products for the '202 Patent include at least Micron's SSD Products.

201.    Micron's SSD Products include electrostatic discharge (ESD) circuits.

202.    Micron's 2300 SSD is an Accused Product.

203.    Micron's 2300 SSD includes electrostatic discharge (ESD) circuits.

204.    Micron's 2300 SSD includes an integrated circuit. See:



Micron's 2300 SSD PCB (annotated)



Micron's 2300 SSD PCB



Micron's 2300 SSD die functional blocks (annotated)

205.    Claim 1 of the '202 Patent recites: "a first power domain," and "a second power domain." The Accused Products meet this element.

206.    For example, Micron's 2300 SSD includes a first power domain and a second power domain. See:



Micron's 2300 SSD circuit diagram of GPIO Interface



Micron's 2300 SSD circuit diagram of ESD Block

207.    Micron's 2300 SSD includes the power domain VDDa/VSSa.

208.    Micron's 2300 SSD includes the power domain VDDc/VSSa.

209.    Claim 1 of the '202 Patent recites: "a bank of input/output (I/O) cells coupled to said first and second power domains, including a first plurality of active clamps for said first power domain and a second plurality of active clamps for said second power domain wherein said first and second pluralities of active clamps overlap along said bank of I/O cells."  The Accused Products meet this element.

210.    For example, Micron's 2300 SSD comprises a bank of input/output (I/O) cells (an example of a bank of I/O cells is annotated in purple and examples of an I/O cell are annotated in green) coupled to said first and second power domains. See:



Micron's 2300 SSD die layout (annotated)



Micron's 2300 SSD die layout (annotated)

211.    Each I/O cell is coupled to the power domain VDDa/VSSa and the power domain VDDc/VSSa. See:



Micron's 2300 SSD circuit diagram of IO_BUFFERa



Micron's 2300 SSD circuit diagram of IO_BUFFERc

212.    Micron's 2300 SSD further comprises a first plurality of active clamps for said first power domain and a second plurality of active clamps for said second power domain wherein said first and second pluralities of active clamps overlap along said bank of I/O cells.

213.    For example, Micron's 2300 SSD comprises ESDb (annotated in blue) and ESDa (annotated in solid orange), which overlap along said bank of I/O cells (an example of a bank of I/O cells is annotated in purple). See:



Micron's 2300 SSD die layout (annotated)



Micron's 2300 SSD die layout (annotated)

214. ESDb includes active clamps for the power domain VDDa/VSSa. N41 is an active clamp. See:



Micron's 2300 SSD circuit diagram of ESDb



Micron's 2300 SSD circuit diagram of ESD Block

215.    ESDa includes active clamps for the power domain VDDc/VSSa.  N36 is an active

clamp.  See:



Micron's 2300 SSD circuit diagram of ESDa



Micron's 2300 SSD circuit diagram of ESD Block

216.    Based on these representative allegations, Micron therefore infringes and continues

to infringe the '202 Patent, based on the importation, sale, offer for sale, or use of the Accused

Products.

217.    In addition or in the alternative, Micron has directed and controlled and continues to direct or control the manufacturing process and/or importation by Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron's subsidiaries, Micron customers, and/or other parties for the Accused Products. Micron is therefore vicariously liable for these actions.

218.    Accordingly, Micron has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '202 Patent under 35 U.S.C. §§ 271(a).

219.    In addition, Micron has indirectly infringed and continues to indirectly infringe the '202 Patent under 35 U.S.C. § 271(b).

220.    Micron indirectly infringes the '202 Patent because it has induced and continues to induce third parties, including Micron's Wafer Subcontractors, Supply Chain and Third-Party Service Providers, customers, and subsidiaries to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

221.    Micron induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

222.    For example, Micron publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products. As another example, Micron facilitates, coordinates, and/or collaborates with intermediary entities

(e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to Micron customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

223.    Micron took the above actions intending to cause infringing acts by these third parties.

224.    Micron has known of the '202 Patent since at least September 13, 2022, when NXP sent Micron the Notice Letter, which identified the '202 Patent and was accompanied by evidence of use documents.

225.    If Micron did not know that the actions it encouraged constituted infringement of the '202 Patent, Micron was willfully blind as to its inducing infringement of others. Micron subjectively believed that there was a high probability that others would infringe the '202 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

226.    Accordingly, Micron has indirectly infringed and continues to indirectly infringe the '202 Patent under 35 U.S.C. § 271(b).

227.    Micron's infringement of the '202 Patent has been willful and egregious and continues to be willful and egregious.

228.    Micron had knowledge of the '202 Patent and knew its actions constituted infringement of the '202 Patent, or at least subjectively believed that there was a high probability that the '202 Patent existed and took deliberate actions to avoid learning of the '202 Patent.

229.    Micron's acts of infringement have caused and continue to cause damage to Nextech. Nextech is entitled to recover from Micron the damages sustained by Nextech as a result of these wrongful acts in an amount subject to proof at trial.

230.    Micron's infringement of the '202 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## COUNT 2: INFRINGEMENT OF U.S. PATENT NO. 7,999,601

231.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

232.    U.S. Patent No. 7,999,601 (the '601 Patent), entitled "Charge Pump and Control Scheme," was legally and duly issued on August 16, 2011. *See* Ex. B.

233.    Nextech owns all rights, title, and interest in the '601 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

234.    Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '601 Patent.  For example, NXP provided Micron with actual notice of its infringement prior to the filing of this lawsuit.

235.    The '601 Patent is valid, enforceable, and directed to patentable subject matter.

236.    Micron has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '601 Patent at least by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing Accused Products into this District and elsewhere in the United States.

237.    Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

238.    For purposes of showing infringement of the '601 Patent, all the models and product lines of the Accused Products include the same or substantially the same structure which are formed in the same way, and therefore infringe in the same way.

239.    Claim 1 of the '601 Patent recites: "A switch controller comprising."  To the extent that this preamble is limiting, the Accused Products meet this element.

240.    The Accused Products include switch controllers.

241.    The Accused Products for the '601 Patent include at least Micron's SSD Products.

242.    Micron's SSD Products include switch controllers.

243.    Micron's 2300 SSD is an Accused Product.

244.    Micron's 2300 SSD includes 3D NAND chips which include switch controllers. See:



Micron's 2300 SSD PCB (annotated)



Micron's 2300 SSD PCB



Micron's 2300 SSD die functional blocks (annotated)



Micron's 2300 SSD die functional blocks (annotated)

245.    Claim 1 of the '601 Patent recites: "a charge pump configured to provide a first charge voltage." The Accused Products meet this element.

246.    For example, Micron's 2300 SSD includes a charge pump (an example of which is annotated in red) configured to provide a first charge voltage (an example of which is annotated in orange). See:



Micron's 2300 SSD circuit diagram of CP_UNITx (annotated)

247.    Claim 1 of the '601 Patent recites: "a selector switch, an input of the selector switch connected to the charge pump and the selector switch operable to connect to an output channel for charging the output channel."  The Accused Products meet this element.

248.    For example, Micron's 2300 SSD comprises a selector switch (an example of which is annotated in yellow), which is operable to connect to an output channel (an example of which is annotated in purple) for charging the output channel. See:



Micron's 2300 SSD circuit diagram of WL_SW (annotated)

249.    An input (e.g., VCPx) of the selector switch (an example of which is annotated in green) is connected to the charge pump (an example of which is annotated in red). See:



Micron's 2300 SSD circuit diagram of WL_SW (annotated)



Micron's 2300 SSD circuit diagram of SWa (annotated)



Micron's 2300 SSD circuit diagram of DATA_PATH



Micron's 2300 SSD circuit diagram of CHARGE_PUMPS



Micron's 2300 SSD circuit diagram of CPx_BLOCK



Micron's 2300 SSD circuit diagram of CP_POSx



Micron's 2300 SSD circuit diagram of CP_POSx_CELL



Micron's 2300 SSD circuit diagram of CP_UNITx (annotated)

250. Claim 1 of the '601 Patent recites: "a power source connection communicating with the input to the selector switch, wherein the power source connection provides power at a second charge voltage, wherein the second charge voltage is less than the first charge voltage, wherein during an enablement of the channel from a disabled state, the selector switch provides power from the power source connection to charge the output channel from a disabled state to a voltage below

the first charge voltage and subsequently provides power from the charge pump to charge the output channel to the first charge voltage." The Accused Products meet this element.

251.    For example, Micron's 2300 SSD comprises a power source connection (an example of which is annotated in blue) which provides power at a second charge voltage (an example of which is annotated in green), wherein the second charge voltage is less than the first charge voltage (an example of which is annotated in orange). See:



Micron's 2300 SSD circuit diagram of CP_UNITx (annotated)

252. The second charge voltage is approximately VDDy.

253. The first charge voltage is approximately 2 * VDDy.

254. The second charge voltage is less than the first charge voltage.

255. The power source connection (an example of which is annotated in blue) communicates with the input (e.g., VCPx) to the selector switch (an example of which is annotated in yellow), wherein during an enablement of the channel from a disabled state, the selector switch provides power from the power source connection to charge the output channel (an example of which is annotated in purple) from a disabled state to a voltage below the first charge voltage (e.g., the second charge voltage, an example of which is annotated in green) and subsequently provides power from the charge pump (an example of which is annotated in red) to charge the output channel to the first charge voltage (an example of which is annotated in orange).  See:



Micron's 2300 SSD circuit diagram of CP_UNITx (annotated)



Micron's 2300 SSD circuit diagram of CP_POSx_CELL



Micron's 2300 SSD circuit diagram of CP_POSx



Micron's 2300 SSD circuit diagram of CPx_BLOCK



Micron's 2300 SSD circuit diagram of CHARGE_PUMPS



Micron's 2300 SSD circuit diagram of DATA_PATH



Micron's 2300 SSD circuit diagram of SWa (annotated)



Micron's 2300 SSD circuit diagram of WL_SW (annotated)

256.    Based on these representative allegations, Micron therefore infringes and continues to infringe the '601 Patent, based on the importation, sale, offer for sale, or use of the Accused Products.

257.    In addition or in the alternative, Micron has directed and controlled and continues to direct or control the manufacturing process and/or importation by Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron's subsidiaries, Micron customers, and/or other parties for the Accused Products.  Micron is therefore vicariously liable for these actions.

258.    Accordingly, Micron has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '601 Patent under 35 U.S.C. §§ 271(a).

259.    In addition, Micron has indirectly infringed and continues to indirectly infringe the '601 Patent under 35 U.S.C. § 271(b).

260.    Micron indirectly infringes the '601 Patent because it has induced and continues to induce third parties, including Micron's Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

261.    Micron induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

262.    For example, Micron publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products. As another example, Micron facilitates, coordinates, and/or collaborates with intermediary entities (e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to Micron customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

263.    Micron took the above actions intending to cause infringing acts by these third parties.

264.    Micron has known of the '601 Patent since at least September 13, 2022, when NXP sent Micron the Notice Letter, which identified the '601 Patent and was accompanied by evidence of use documents.

265.    If Micron did not know that the actions it encouraged constituted infringement of the '601 Patent, Micron was willfully blind as to its inducing infringement of others. Micron subjectively believed that there was a high probability that others would infringe the '601 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

266.    Accordingly, Micron has indirectly infringed and continues to indirectly infringe the '601 Patent under 35 U.S.C. § 271(b).

267.    Micron's infringement of the '601 Patent has been willful and egregious and continues to be willful and egregious.

268.    Micron had knowledge of the '601 Patent and knew its actions constituted infringement of the '202 Patent, or at least subjectively believed that there was a high probability that the '601 Patent existed and took deliberate actions to avoid learning of the '601 Patent.

269.    Micron's acts of infringement have caused and continue to cause damage to Nextech. Nextech is entitled to recover from Micron the damages sustained by Nextech as a result of these wrongful acts in an amount subject to proof at trial.

270.    Micron's infringement of the '601 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## COUNT 3: INFRINGEMENT OF U.S. PATENT NO. 8,179,108

271.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

272.    U.S. Patent No. 8,179,108 (the '108 Patent), entitled "Regulator Having Phase Compensation Circuit," was legally and duly issued on May 15, 2012. *See* Ex. C.

273.    Nextech owns all rights, title, and interest in the '108 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

274.    Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '108 Patent.  For example, NXP provided Micron with actual notice of its infringement prior to the filing of this lawsuit.

275.    The '108 Patent is valid, enforceable, and directed to patentable subject matter.

276.    Micron has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '108 Patent at least by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing Accused Products into this District and elsewhere in the United States.

277.    Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

278.    For purposes of showing infringement of the '108 Patent, all the models and product lines of the Accused Products include the same or substantially the same structure which are formed in the same way, and therefore infringe in the same way.

279.    Claim 1 of the '108 Patent recites: "A regulator, comprising."  To the extent that this preamble is limiting, the Accused Products meet this element.

280.    The Accused Products include regulators.

281.    The Accused Products for the '108 Patent include at least Micron's DDR SDRAM Products.

282.    Micron's DDR SDRAM Products include regulators.

283.    For example, the Accused Products for the '108 Patent include Micron's DDR SDRAM Products using the D9XPC memory chip.

284.    The D9XPC memory chip includes regulators, such as VN_VREG.  See:



The D9XPC memory chip top



The D9XPC memory chip circuit diagram



The D9XPC memory chip circuit diagram of VN_VREG

285.    Claim 1 of the '108 Patent recites: "an output transistor including a control terminal to which a control voltage is applied, wherein the output transistor generates an output current in accordance with the control voltage."  The Accused Products meet this element.

286.    For example, the D9XPC memory chip includes an output transistor (an example of which is annotated in orange) including a control terminal to which a control voltage (an example of which is annotated in red) is applied, wherein the output transistor generates an output current (passing through the output transistor) in accordance with the control voltage. See:

52



The D9XPC memory chip circuit diagram of DAMPd (annotated)

287.    Claim 1 of the '108 Patent recites: "a differential amplifier that controls via feedback the control voltage in accordance with a level of the output current." The Accused Products meet this element.

288.    For example, the D9XPC memory chip comprises a differential amplifier (an example of which is annotated in blue) that controls via feedback the control voltage (an example of which is annotated in red) in accordance with a level of the output current. See:



The D9XPC memory chip circuit diagram of DAMPd (annotated)

289.    The level of the output current determines the "OU" signal.

290.    The "OU" signal determines the "INP" signal.  See:



The D9XPC memory chip circuit diagram of VN_VREG

291.    The "INP" signal is fed back to the differential amplifier.

292.    The differential amplifier controls the control voltage.

293.    Claim 1 of the '108 Patent recites: "a phase compensation circuit connected between the differential amplifier and the control terminal of the output transistor, wherein the phase compensation circuit adjusts an output impedance of the differential amplifier, and wherein the phase compensation circuit includes a variable resistor that decreases the output impedance of the differential amplifier when the output current increases." The Accused Products meet this element.

294.   For example, the D9XPC memory chip comprises a phase compensation circuit (an example of which is annotated in purple) that is connected between the differential amplifier (an example of which is annotated in blue) and the control terminal of the output transistor (example of which is annotated in orange), wherein the phase compensation circuit adjusts an output impedance of the differential amplifier, and wherein the phase compensation circuit includes a variable resistor (an example of which is annotated in green) that decreases the output impedance of the differential amplifier when the output current increases. See:



The D9XPC memory chip circuit diagram of DAMPd (annotated)



The D9XPC memory chip circuit diagram of VN_VREG (annotated)

295.    For example, when the output current increases, the resistance of N8 increases, causing the output impedance of the differential amplifier to decrease.

296.    Based on these representative allegations, Micron therefore infringes and continues to infringe the '108 Patent, based on the importation, sale, offer for sale, or use of the Accused Products.

297.    In addition or in the alternative, Micron has directed and controlled and continues to direct or control the manufacturing process and/or importation by Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron's subsidiaries, Micron customers, and/or other parties for the Accused Products.  Micron is therefore vicariously liable for these actions.

298.    Accordingly, Micron has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '108 Patent under 35 U.S.C. §§ 271(a).

299.    In addition, Micron has indirectly infringed and continues to indirectly infringe the '108 Patent under 35 U.S.C. § 271(b).

300.    Micron indirectly infringes the '108 Patent because it has induced and continues to induce third parties, including Micron's Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

301.    Micron induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

302.    For example, Micron publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products. As another example, Micron facilitates, coordinates, and/or collaborates with intermediary entities (e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to Micron customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

303.    Micron took the above actions intending to cause infringing acts by these third parties.

304.    Micron has known of the '108 Patent since at least September 13, 2022, when NXP sent Micron the Notice Letter, which identified the '108 Patent and was accompanied by evidence of use documents.

305.    If Micron did not know that the actions it encouraged constituted infringement of the '108 Patent, Micron was willfully blind as to its inducing infringement of others. Micron subjectively believed that there was a high probability that others would infringe the '108 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

306.    Accordingly, Micron has indirectly infringed and continues to indirectly infringe the '108 Patent under 35 U.S.C. § 271(b).

307.    Micron's infringement of the '108 Patent has been willful and egregious and continues to be willful and egregious.

308.    Micron had knowledge of the '108 Patent and knew its actions constituted infringement of the '108 Patent, or at least subjectively believed that there was a high probability that the '108 Patent existed and took deliberate actions to avoid learning of the '108 Patent.

309.    Micron's acts of infringement have caused and continue to cause damage to Nextech. Nextech is entitled to recover from Micron the damages sustained by Nextech as a result of these wrongful acts in an amount subject to proof at trial.

310.    Micron's infringement of the '108 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## COUNT 4: INFRINGEMENT OF U.S. PATENT NO. 8,558,591

311.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

312.    U.S. Patent No. 8,558,591 (the '591 Patent), entitled "Phase Locked Loop with Power Supply Control," was legally and duly issued on October 15, 2013. *See* Ex. D.

313.    Nextech owns all rights, title, and interest in the '591 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

314.    Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '591 Patent.  For example, NXP provided Micron with actual notice of its infringement prior to the filing of this lawsuit.

315.    The '591 Patent is valid, enforceable, and directed to patentable subject matter.

316.    Micron has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '591 Patent at least by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing Accused Products into this District and elsewhere in the United States.

317.    Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product.  Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

318.    For purposes of showing infringement of the '591 Patent, all the models and product lines of the Accused Products include the same or substantially the same structure which are formed in the same way, and therefore infringe in the same way.

319.    Claim 1 of the '591 Patent recites: "A phase locked loop (PLL) comprising."  To the extent that this preamble is limiting, the Accused Products meet this element.

320.    The Accused Products include PLLs.

321.    The Accused Products for the '591 Patent include at least Micron's SSD Products.

322.    Micron's SSD Products include PLLs.

323.    Micron's 2300 SSD is an Accused Product.

324.    Micron's 2300 SSD includes PLLs.  See:



Micron's 2300 SSD PCB (annotated)



Micron's 2300 SSD PCB



Micron's 2300 SSD die functional blocks (annotated)



Micron's 2300 SSD die functional blocks (annotated)



Micron's 2300 SSD circuit diagram of PLLa

325.    Claim 1 of the '591 Patent recites: "a phase frequency detector powered by a first analog supply voltage."  The Accused Products meet this element.

326.    For example, Micron's 2300 SSD includes a phase frequency detector (an example of which is annotated in red) powered by a first analog supply voltage. See:



Micron's 2300 SSD circuit diagram of PLLa (annotated)



Micron's 2300 SSD circuit diagram of PLLa (annotated)

327. The phase frequency detector in Micron's 2300 SSD is powered by VDDx. See:



Micron's 2300 SSD circuit diagram of PHASE_DETECTOR_BLC



Micron's 2300 SSD circuit diagram of PHASE_DETECTOR_BLC

328.    VDDx is an analog supply voltage.

329.    Claim 1 of the '591 Patent recites: "a charge pump coupled to the phase frequency detector, the charge pump powered by a second analog supply voltage, different from the first analog supply voltage."  The Accused Products meet this element.

330.    For example, Micron's 2300 SSD comprises a charge pump (an example of which is annotated in blue) coupled to the phase frequency detector (an example of which is annotated in red), the charge pump powered by a second analog supply voltage, different from the first analog supply voltage. See:



Micron's 2300 SSD circuit diagram of PLLa (annotated)



Micron's 2300 SSD circuit diagram of PLLa (annotated)

331.    The charge pump in Micron's 2300 SSD is powered by VREGa.

332.    VREGa is an analog supply voltage.

333.    VREGa is different from VDDx.

334.    Claim 1 of the '591 Patent recites: "a voltage controlled oscillator (VCO) coupled to the charge pump, the VCO powered by a third analog supply voltage, different from the first analog supply voltage and different from the second analog supply voltage, wherein a frequency of the VCO is controlled by a control voltage."  The Accused Products meet this element.

335.    For example, Micron's 2300 SSD comprises a VCO (an example of which is annotated in green) coupled to the charge pump (an example of which is annotated in blue), the VCO powered by a third analog supply voltage, different from the first analog supply voltage and different from the second analog supply voltage, wherein a frequency of the VCO is controlled by a control voltage. See:



Micron's 2300 SSD circuit diagram of PLLa (annotated)



Micron's 2300 SSD circuit diagram of PLLa (annotated)



Micron's 2300 SSD circuit diagram of LC_VCO

336.    The VCO in Micron's 2300 SSD is powered by VDDb_FILT.

337.    VDDb_FILT is an analog supply voltage.

338.    VDDb_FILT is different from VDDx.

339.    VDDb_FILT is different from VREGa.

340.    A frequency of the VCO is controlled by a control voltage.   For example, a frequency of the VCO is controlled by V_CP.   See:



Micron's 2300 SSD circuit diagram of PLLa



Micron's 2300 SSD circuit diagram of LC_VCO



Micron's 2300 SSD circuit diagram of VARICAP_BANK



Micron's 2300 SSD circuit diagram of SW_VCAPa

341.    Claim 1 of the '591 Patent recites: "a supply voltage provider having a first circuit node coupled to a fourth analog supply voltage, a second circuit node which provides the first analog supply voltage, a third circuit node which provides the second analog supply voltage, and a fourth circuit node which provides the third analog supply voltage." The Accused Products meet this element.

342.    For example, Micron's 2300 SSD comprises a supply voltage provider having a first circuit node (an example of which is annotated in red) coupled to a fourth analog supply voltage, a second circuit node (an example of which is annotated in blue) which provides the first analog supply voltage, a third circuit node (an example of which is annotated in green) which provides the second analog supply voltage, and a fourth circuit node (an example of which is annotated in orange) which provides the third analog supply voltage. *See:*



Micron's 2300 SSD circuit diagram of PLLa (annotated)



Micron's 2300 SSD circuit diagram of VREGa (annotated)

343.    VDDb is an analog supply voltage.

344.    Claim 1 of the '591 Patent recites: "a current compensator coupled to one of the second, third, or fourth circuit nodes, wherein the current compensator provides a variable current draw from the one of the second, third, or fourth circuit nodes based on the control voltage."  The Accused Products meet this element.

345.    For example, Micron's 2300 SSD comprises a current compensator coupled to the third circuit node (providing the second analog supply voltage, e.g., VREGa), which provides a variable current draw from the third circuit node based on the control voltage (e.g., V_CP).  See:



Micron's 2300 SSD circuit diagram of LC_VCO

346.    Based on these representative allegations, Micron therefore infringes and continues to infringe the '591 Patent, based on the importation, sale, offer for sale, or use of the Accused Products.

347.    In addition or in the alternative, Micron has directed and controlled and continues to direct or control the manufacturing process and/or importation by Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron's subsidiaries, Micron customers, and/or other parties for the Accused Products.  Micron is therefore vicariously liable for these actions.

348.    Accordingly, Micron has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '591 Patent under 35 U.S.C. §§ 271(a).

349.    In addition, Micron has indirectly infringed and continues to indirectly infringe the '591 Patent under 35 U.S.C. § 271(b).

350.    Micron indirectly infringes the '591 Patent because it has induced and continues to induce third parties, including Micron's Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

351.    Micron induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

352.    For example, Micron publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products. As another example, Micron facilitates, coordinates, and/or collaborates with intermediary entities (e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to Micron customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

353.    Micron took the above actions intending to cause infringing acts by these third parties.

354.    Micron has known of the '591 Patent since at least September 13, 2022, when NXP sent Micron the Notice Letter, which identified the '591 Patent and was accompanied by evidence of use documents.

355.    If Micron did not know that the actions it encouraged constituted infringement of the '591 Patent, Micron was willfully blind as to its inducing infringement of others. Micron subjectively believed that there was a high probability that others would infringe the '591 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

356.    Accordingly, Micron has indirectly infringed and continues to indirectly infringe the '591 Patent under 35 U.S.C. § 271(b).

357.    Micron's infringement of the '591 Patent has been willful and egregious and continues to be willful and egregious.

358.    Micron had knowledge of the '591 Patent and knew its actions constituted infringement of the '591 Patent, or at least subjectively believed that there was a high probability that the '591 Patent existed and took deliberate actions to avoid learning of the '591 Patent.

359.    Micron's acts of infringement have caused and continue to cause damage to Nextech. Nextech is entitled to recover from Micron the damages sustained by Nextech as a result of these wrongful acts in an amount subject to proof at trial.

360.    Micron's infringement of the '591 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## COUNT 5: INFRINGEMENT OF U.S. PATENT NO. 8,604,889

361.    Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

362. U.S. Patent No. 8,604,889 (the '889 Patent), entitled "Tunable LC Oscillator with Common Mode Voltage Adjustment," was legally and duly issued on December 10, 2013. *See* Ex. E.

363. Nextech owns all rights, title, and interest in the '889 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

364. Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '889 Patent. For example, NXP provided Micron with actual notice of its infringement prior to the filing of this lawsuit.

365. The '889 Patent is valid, enforceable, and directed to patentable subject matter.

366. Micron has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '889 Patent by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing the Accused Products into this District and elsewhere in the United States.

367. Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product. Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

368. For purposes of showing infringement of the '889 Patent, all the models and product lines of the Accused Products include the same or substantially the same semiconductor structure which are formed in the same way, and therefore infringe in the same way.

369.    Claim 1 of the '889 Patent recites: "An adjustable frequency oscillator comprising."

To the extent that this preamble is limiting, the Accused Products meet this element.

370.    The Accused Products include an adjustable frequency oscillator.

371.    The Accused Products for the '889 Patent include at least Micron's SSD Products.

372.    Micron's SSD Products include adjustable frequency oscillators.

373.    Micron's 2300 SSD is an Accused Product.

374.    Micron's 2300 SSD includes an adjustable frequency oscillator.

375.    For example, Micron's 2300 SSD includes an adjustable frequency oscillator in its

PCIe PLLa.  See:



Micron's 2300 SSD PCB (annotated)



Micron's 2300 SSD PCB



Micron's 2300 SSD die functional blocks (annotated)



Micron's 2300 SSD circuit diagram of PCIe PLLa

376. LC_VCO includes part of an adjustable frequency oscillator. See:



Micron's 2300 SSD circuit diagram of LC_VCO

377.    Claim 1 of the '889 Patent recites: "a variable supply source."  The Accused Products meet this element.

378.    For example, Micron's 2300 SSD comprises a variable supply source (an example of which is annotated in red). See:



Micron's 2300 SSD circuit diagram of LC_VCO (annotated)

379.    Claim 1 of the '889 Patent recites: "a tank circuit coupled to the variable supply source and comprising: an inductance; and a first variable capacitance circuit comprising MOS switches configured to change a frequency of the adjustable frequency oscillator."  The Accused Products meet this element.

380.    For example, Micron's 2300 SSD includes LC_VCO, which includes a tank circuit (an example of which is annotated in green) that is coupled to the variable supply source (an example of which is annotated in red) and comprises an inductance (an example of which is annotated in orange) and a first variable capacitance circuit (an example of which is annotated in blue). See:



Micron's 2300 SSD circuit diagram of LC_VCO (annotated)

381.    The first variable capacitance circuit includes MOS switches (examples of which are annotated in red) configured to change a frequency of the adjustable frequency oscillator.  See:



Micron's 2300 SSD circuit diagram of VARICAP_BANK



Micron's 2300 SSD circuit diagram of SW_VCAPa (annotated)

382.    Claim 1 of the '889 patent recites: "a cross-coupled transistor pair coupled to the tank circuit." The Accused Products meet this element.

383.    For example, Micron's 2300 SSD includes LC_VCO, which includes a cross-coupled transistor pair (an example of which is annotated in purple) coupled to the tank circuit (an example of which is annotated in green). See:



Micron's 2300 SSD circuit diagram of LC_VCO (annotated)

384.    N1 and N2 are transistors.

385.    N1 and N2 are cross-coupled.

386.    N1 and N2 form a cross-coupled transistor pair.

387.    Claim 1 of the '889 patent recites: "a common mode voltage adjustment circuit coupled to the cross-coupled transistor pair and to a reference voltage."  The Accused Products meet this element.

388.    For example, Micron's 2300 SSD includes VREGa, which includes a common mode voltage adjustment circuit coupled to the cross-coupled transistor pair and to a reference voltage.

389.    Voltage VREGa is a common mode voltage of LC_VCO.  See:



Micron's 2300 SSD circuit diagram of LC_VCO



Micron's 2300 SSD circuit diagram of LC_VCO

390.     Voltage VREGa is adjusted by the VREGa circuit. See:



Micron's 2300 SSD circuit diagram of PCIe PLLa



Micron's 2300 SSD circuit diagram of VREGa

391.    VREGa is coupled to LC_VCO, and thus coupled to the cross-coupled transistor pair.

392.    VREGa is coupled to a reference voltage, for example, the output voltage of SCALE_AMP. See:



Micron's 2300 SSD circuit diagram of VREGa

393.    Claim 1 of the '889 Patent recites: "a control circuit configured to, when the frequency is changed, adjust the common mode voltage to reduce state changes of the MOS switches, wherein the common mode voltage increases when the frequency is reduced, and decreases when the frequency is increased."  The Accused Products meet this element.

394.    For example, Micron's 2300 SSD includes a control circuit that generates signals (e.g., VREGa_CNTLa, VCO_CNTLa, VCO_CNTLb) so as to, when the frequency is changed, adjust the common mode voltage (e.g., VREGa) to reduce state changes of the MOS switches, wherein the common mode voltage increases when the frequency is reduced, and decreases when the frequency is increased. See:



Micron's 2300 SSD circuit diagram of PCIe PLLa



Micron's 2300 SSD circuit diagram of VREGa



Micron's 2300 SSD circuit diagram of VREGa



Micron's 2300 SSD circuit diagram of LC_VCO

395.    Based on these representative allegations, Micron therefore infringes and continues to infringe the '889 Patent, based on the importation, sale, offer for sale, or use of the Accused Products.

396.    In addition or in the alternative, Micron has directed and controlled and continues to direct or control the manufacturing process and/or importation by Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron's subsidiaries, Micron customers, and/or other parties for the Accused Products.  Micron is therefore vicariously liable for these actions.

397.    Accordingly, Micron has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '889 Patent under 35 U.S.C. §§ 271(a).

398.    In addition, Micron has indirectly infringed and continues to indirectly infringe the '889 Patent under 35 U.S.C. § 271(b).

399.    Micron indirectly infringes the '889 Patent because it has induced and continues to induce third parties, including Micron's Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

400.    Micron induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

401.    For example, Micron publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products. As another example, Micron facilitates, coordinates, and/or collaborates with intermediary entities (e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to Micron customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

402.    Micron took the above actions intending to cause infringing acts by these third parties.

403.    Micron has known of the '889 Patent since at least September 13, 2022, when NXP sent Micron the Notice Letter, which identified the '889 Patent and was accompanied by evidence of use documents.

404.    If Micron did not know that the actions it encouraged constituted infringement of the '889 Patent, Micron was willfully blind as to its inducing infringement of others. Micron subjectively believed that there was a high probability that others would infringe the '889 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

405.    Accordingly, Micron has indirectly infringed and continues to indirectly infringe the '889 Patent under 35 U.S.C. § 271(b).

406.    Micron's infringement of the '889 Patent has been willful and egregious and continues to be willful and egregious.

407.    Micron had knowledge of the '889 Patent and knew its actions constituted infringement of the '889 Patent, or at least subjectively believed that there was a high probability that the '889 Patent existed and took deliberate actions to avoid learning of the '889 Patent.

408.    Micron's acts of infringement have caused and continue to cause damage to Nextech.  Nextech is entitled to recover from Micron the damages sustained by Nextech as a result of these wrongful acts in an amount subject to proof at trial.

409.    Micron's infringement of the '889 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## COUNT 6: INFRINGEMENT OF U.S. PATENT NO. 8,704,587

410.     Nextech incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

411.     U.S. Patent No. 8,704,587 (the '587 Patent), entitled "Configurable Multistage Charge Pump Using a Supply Detect Scheme," was legally and duly issued on April 22, 2014. *See* Ex. F.

412.     Nextech owns all rights, title, and interest in the '587 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

413.     Nextech, and/or its predecessor-in-interest, has complied with 35 U.S.C. § 287, to pursue and recover damages for infringement of the '587 Patent.  For example, NXP provided Micron with actual notice of its infringement prior to the filing of this lawsuit.

414.     The '587 Patent is valid, enforceable, and directed to patentable subject matter.

415.     Micron has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '587 Patent by making, using, selling and/or offering to sell the Accused Products in this District and elsewhere in the United States, and/or importing the Accused Products into this District and elsewhere in the United States.

416.     Nextech provides the following explanation of infringement with regard to an exemplary claim compared to exemplary functionality in a representative product. Nextech reserves the right to present additional or alternative explanations of infringement for the claim and functionalities identified below and for other claims and functionalities of the Accused Products.

417.    For purposes of showing infringement of the '587 Patent, all the models and product lines of the Accused Products include the same or substantially the same semiconductor structure which are formed in the same way, and therefore infringe in the same way.

418.    Claim 1 of the '587 Patent recites: "A configurable multistage charge pump, comprising." To the extent that this preamble is limiting, the Accused Products meet this element.

419.    The Accused Products include a configurable multistage charge pump.

420.    The Accused Products for the '587 Patent include at least Micron's SSD Products.

421.    Micron's SSD Products include configurable multistage charge pumps.

422.    Micron's 2300 SSD is an Accused Product.

423.    Micron's 2300 SSD includes 3D NAND chips which include a configurable multistage charge pump.

424.    For example, Micron's 2300 SSD includes a configurable multistage charge pump in its NAND chips.  See:



**Figure 0.1** Micron MTFDHBA1T0TDV-1AZ12ABYY 1TB SSD side A

Micron's 2300 SSD PCB (annotated)



Micron's 2300 SSD PCB



Micron's 2300 SSD die functional blocks (annotated)

425. Claim 1 of the '587 Patent recites: "a plurality of pumpcells coupled together in series, comprising a first pumpcell receiving an input voltage and at least one remaining pumpcell,

wherein a last one of said at least one remaining pumpcell generates an output voltage." The Accused Products meet this element.

426. For example, Micron's 2300 SSD comprises pumpcells coupled together in series (examples are annotated in purple), comprising a first pumpcell (an example of which is annotated in red) receiving an input voltage (an example of which is annotated in green) and at least one remaining pumpcell, wherein a last one of said at least one remaining pumpcell (an example of which is annotated in orange) generates an output voltage (an example of which is annotated in blue). See:



Micron's 2300 SSD circuit diagram of CP_POSy (annotated)



Micron's 2300 SSD circuit diagram of CP_POSy (annotated)



Micron's 2300 SSD circuit diagram of CP_POSy (annotated)



Micron's 2300 SSD circuit diagram of CP_POSy (annotated)

427.    Claim 1 of the '587 Patent recites: "at least one bypass switch, each coupled to selectively provide said input voltage to a pumpcell input of a corresponding one of said at least one remaining pumpcell."  The Accused Products meet this element.

428.    For example, Micron's 2300 SSD includes at least one bypass switch (an example of which is highlighted in red), each coupled to selectively provide said input voltage (e.g., VDDy) to a pumpcell input of a corresponding one of said at least one remaining pumpcell. See:



Micron's 2300 SSD circuit diagram of CP_POSy (annotated)

429.    N7 is a bypass switch.

430.    VIN is a pumpcell input.

431.    N7 selectively provides VDDy to VIN.

432.    Claim 1 of the '587 patent recites: "control logic, coupled to said plurality of pumpcells and to said at least one bypass switch, configured to determine one of a plurality of voltage ranges of said input voltage, to enable each of said plurality of pumpcells for a first voltage range of said plurality of voltage ranges and to disable and bypass at least one pumpcell for at least

one other voltage range of said plurality of voltage ranges." The Accused Products meet this element.

433.    For example, Micron's 2300 SSD includes control logic that is coupled to said plurality of pumpcells and said at least one bypass switch, and is configured to determine one of a plurality of voltage ranges of said input voltage (e.g., VDDy, annotated in red), to enable each of said plurality of pumpcells for a first voltage range of said plurality of voltage ranges and to disable and bypass at least one pumpcell for at least one other voltage range of said plurality of voltage ranges, for example, by adjusting CELL_E and SWE signals (examples of which are annotated in orange). See:



Micron's 2300 SSD circuit diagram of SWITCHES_SET (annotated)



Micron's 2300 SSD circuit diagram of MIXED_ANALOG_BLOCKS (annotated)



Micron's 2300 SSD circuit diagram of MIXED_ANALOG_BLOCKS (annotated)



Micron's 2300 SSD circuit diagram of Charge Pumps (annotated)



Micron's 2300 SSD circuit diagram of CP_POSy (annotated)



Micron's 2300 SSD circuit diagram of CP_POSz_CELL (annotated)



Micron's 2300 SSD circuit diagram of CP_POSy_CELL (annotated)



Micron's 2300 SSD circuit diagram of CLK_SYNCy (annotated)

434.    The CELL_E and SWE signals can be adjusted to enable pumpcells, or to disable and bypass pumpcells.

435.    Claim 1 of the '587 patent recites: "wherein said control logic comprises a comparator which compares a signal indicative of said output voltage with a reference signal and which provides a clock enable signal indicative thereof to a clock enable input of each of said plurality of pumpcells."  The Accused Products meet this element.

436.    For example, Micron's 2300 SSD includes the control logic, which comprises a comparator which compares a signal indicative of said output voltage (e.g., VCPb_SW) with a reference signal (e.g., VREFb[3]) and which provides a clock enable signal indicative thereof (e.g., CMPR_OU) to a clock enable input of each of said plurality of pumpcells (e.g., CLKn, CLKp). See:



Micron's 2300 SSD circuit diagram of CP_POSy



Micron's 2300 SSD circuit diagram of Charge Pumps



Micron's 2300 SSD circuit diagram of MIXED_ANALOG_BLOCKS



Micron's 2300 SSD circuit diagram of SENSOR_BLOCK



Micron's 2300 SSD circuit diagram of SENSOR_BLOCK



Micron's 2300 SSD circuit diagram of CMPR



Micron's 2300 SSD circuit diagram of Charge Pumps



Micron's 2300 SSD circuit diagram of CP_POSy



Micron's 2300 SSD circuit diagram of CLK_SPLITy

437.    Based on these representative allegations, Micron therefore infringes and continues to infringe the '587 Patent, based on the importation, sale, offer for sale, or use of the Accused Products.

438.    In addition or in the alternative, Micron has directed and controlled and continues to direct or control the manufacturing process and/or importation by Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron's subsidiaries, Micron customers, and/or other parties for the Accused Products.  Micron is therefore vicariously liable for these actions.

439.    Accordingly, Micron has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, the '587 Patent under 35 U.S.C. §§ 271(a).

440. In addition, Micron has indirectly infringed and continues to indirectly infringe the '587 Patent under 35 U.S.C. § 271(b).

441. Micron indirectly infringes the '587 Patent because it has induced and continues to induce third parties, including Micron's Wafer Subcontractors, Supply Chain and Third-Party Service Providers, Micron customers, and subsidiaries, to have made, use, offer for sale, sell, and/or import into the United States the Accused Products without authorization in violation of 35 U.S.C. § 271(b).

442. Micron induced these third parties' direct infringement through its agreements, directives, advertising, sales, design, development, and/or technical materials related to operation of the Accused Products, which contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause customers and distributors to import into the United States or to offer to sell, sell, or use within the United States the Accused Products.

443. For example, Micron publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for the Accused Products. As another example, Micron facilitates, coordinates, and/or collaborates with intermediary entities (e.g., drive/desktop/mobile/server/platform suppliers) who help include or incorporate the Accused Products into components that are sold to Micron customers that then include those components (containing the Accused Products) into products that are imported, sold, or offered for sale in the United States.

444. Micron took the above actions intending to cause infringing acts by these third parties.

445.    Micron has known of the '587 Patent since at least September 13, 2022, when NXP sent Micron the Notice Letter, which identified the '587 Patent and was accompanied by evidence of use documents.

446.    If Micron did not know that the actions it encouraged constituted infringement of the '587 Patent, Micron was willfully blind as to its inducing infringement of others. Micron subjectively believed that there was a high probability that others would infringe the '587 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

447.    Accordingly, Micron has indirectly infringed and continues to indirectly infringe the '587 Patent under 35 U.S.C. § 271(b).

448.    Micron's infringement of the '587 Patent has been willful and egregious and continues to be willful and egregious.

449.    Micron had knowledge of the '587 Patent and knew its actions constituted infringement of the '587 Patent, or at least subjectively believed that there was a high probability that the '587 Patent existed and took deliberate actions to avoid learning of the '587 Patent.

450.    Micron's acts of infringement have caused and continue to cause damage to Nextech.  Nextech is entitled to recover from Micron the damages sustained by Nextech as a result of these wrongful acts in an amount subject to proof at trial.

451.    Micron's infringement of the '587 Patent is exceptional, and Nextech is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Nextech Semiconductor, LLC asks this Court for an order granting the following relief:

A.      A judgment in favor of Plaintiff that Micron has infringed, either literally and/or under the doctrine of equivalents, the '202, '601, '108, '591, '889, and '587 Patents;

B.      A judgment and order finding that Micron's infringement has been willful;

C.      Preliminary and/or permanent injunctions prohibiting Micron from further acts of infringement;

D.      A judgment and order requiring Micron to pay Plaintiff its damages, costs, expenses, and any enhanced damages to which Plaintiff is entitled for Micron's infringement;

E.      A judgment and order requiring Micron to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

F.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees against Micron; and

G.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

DATED: March 6, 2026

Respectfully submitted,

**By:** */s/ Mark D. Siegmund* _____
Mark D. Siegmund
Texas Bar No. 24117055
**CHERRY JOHNSON SIEGMUND
JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas   76710
Telephone:  (254) 732-2242
Facsimile:   (866) 627-3509
msiegmund@cjsjlaw.com

William D. Ellerman
Texas Bar No. 24007151
Ari Rafilson
Texas Bar No. 24060456
Brett Mangrum
Texas Bar No. 24065671
**CHERRY JOHNSON SIEGMUND
JAMES PC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
Email: wellerman@cjsjlaw.com


*Counsel for Plaintiff Nextech Semiconductor,
LLC*